119 P.3d 645

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Randall Nathan WALSH, Defendant–Appellant.**

**No. 30945.**

Court of Appeals of Idaho.

July 28, 2005.

DeFord Law, P.C., Nampa, for appellant. R. George DeFord, Jr. argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

PERRY, Chief Judge.

Randall [1] Nathan Walsh appeals from the district court's order, on intermediate appeal from the magistrate's division, affirming Walsh's judgment of conviction for misdemeanor domestic battery in the presence of a child. We affirm.

### I.

### FACTS AND PROCEDURE

Walsh and the victim in this case were married. The victim was contemplating divorce. One morning while Walsh was in the shower, the victim removed a box of documents from Walsh's vehicle that contained the couple's tax documents and Walsh's inheritance papers. The victim hid the box from Walsh so that she would have the documents for an appointment with her divorce attorney. Fearing that Walsh would be angry, the victim locked herself and her five-year-old son in a bedroom. Upon discovering that the box was missing from his vehicle, Walsh pounded on the bedroom door, opened the locked door, and demanded to know where the box was. The victim responded that it was in a safe place. Walsh started to leave the room and the victim attempted to shut the door. Walsh pushed the door open and called the victim a "bitch." Walsh then pushed the victim with both of his hands, which caused the victim to stumble back about four feet. The victim called the police. Walsh was arrested and charged with misdemeanor domestic battery in the presence of a child. I.C. §§ 18–918(3)(b), 18–918(4).[2]

At trial, Walsh argued that he pushed the victim to move her out of his way so he could find the box, and he requested a jury instruction on the defense of property. Walsh also argued that, because the victim knew that Walsh would be angry when she took the box, the victim provoked Walsh and, therefore, impliedly consented to being battered. Following the jury's deliberations but prior to reading the verdict, the magistrate indicated that while the jury was deliberating the

1. The caption in this case lists the appellant's first name as Randall. However, Walsh informed the magistrate prior to his trial that his actual first name is Randolph.

2. We note that I.C. § 18–918 was recently amended by 2005 Idaho Sess. Laws Ch. 158 (S.B.1061). However, the amendment is not pertinent to this appeal.

magistrate had received a written request for further instruction from the jury and had responded without first consulting the parties.[3] In a note, the jury had asked the magistrate whether the victim's "actions intending to provoke [Walsh's] anger [were] a sign that would imply her consent for him to touch her." The magistrate responded:

This is totally within the province of the jury, although any provocation, if the jury finds that it existed, is not in itself a defense to domestic battery. Still ... whether there was any provocation, for whatever value it might have in deliberation, and it may have, is still for your determination and is for you to decide.

The jury found Walsh guilty, and the magistrate entered a judgment of conviction. Walsh appealed to the district court, arguing that the magistrate erred in refusing to instruct the jury on defense of property and that the magistrate's ex parte jury instruction constituted reversible error. The district court affirmed the judgment of conviction entered by the magistrate, finding that the facts of the case did not warrant giving a defense of property jury instruction and that the magistrate's error in instructing the jury ex parte was harmless. Walsh again appeals.

## II.

### ANALYSIS

■ On review of a decision of the district court, rendered in its appellate capacity, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *State v. Bowman*, 124 Idaho 936, 939, 866 P.2d 193, 196 (Ct.App.1993).

### A. Ex Parte Jury Instruction

■ Walsh argues that the magistrate's ex parte instruction of the jury was contrary to law and violated his right to due process. If the jury, after it has retired for deliberations, desires information on any point of law arising in the cause, it must require the

officer to conduct the jury into court. I.C. § 19–2204. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecutor and the defendant, or after they have been called. *Id.* In addition to this statutory right to presence at criminal proceedings, a defendant has a right under the United States Constitution to be present at every critical stage of the trial. *United States v. Rosales–Rodriguez*, 289 F.3d 1106, 1109 (9th Cir.2002). The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment. *United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486, 490 (1985); *Young v. Herring*, 938 F.2d 543, 557 (5th Cir.1991). The right to presence is also protected by the Due Process Clause in some situations where the defendant is not actually confronting adverse witnesses or evidence. *Gagnon*, 470 U.S. at 526, 105 S.Ct. at 1484, 84 L.Ed.2d at 490; *Moore v. Knight*, 368 F.3d 936, 940 (7th Cir.2004); *Young*, 938 F.2d at 557. The presence of the defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his or her absence and to that extent only. *Gagnon*, 470 U.S. at 526, 105 S.Ct. at 1484, 84 L.Ed.2d at 490; *Rosales–Rodriguez*, 289 F.3d at 1109; *Young*, 938 F.2d at 557. Thus, the mere occurrence of an ex parte conversation between the trial court and a juror does not constitute a deprivation of any constitutional right. *Gagnon*, 470 U.S. at 526, 105 S.Ct. at 1484, 84 L.Ed.2d at 490; *United States v. Bishawi*, 272 F.3d 458, 461 (7th Cir.2001).

■ In this appeal, the state concedes that it was error for the magistrate to respond to the jury's question ex parte but asserts that, because the error was harmless, reversal is not required. Walsh argues that the magistrate's error automatically entitles him to a new trial regardless of whether the error was harmless. Where the jury, during its deliberations, receives out-of-court information or communication from the trial court, this Court applies a four-pronged test to deter-

---

**3.** The magistrate responded to three inquiries from the jury without consulting the parties. Walsh only contests the communication in which the magistrate instructed the jury regarding whether provocation could be a defense to domestic battery.

mine whether the improper communication constitutes reversible error:

(1) It is for the losing party, in the first instance, to show that there was some communication off the record and not in open court. (2) The burden then shifts to the winning party to show what the communication was. If he cannot show what it was, the verdict must be set aside. (3) If he can show what the communication was but it appears to have been of such a character that it *may* have affected the jury, then the verdict must be set aside. (4) Only if it is made clearly to appear that the communication *could not have had any effect,* can the verdict be allowed to stand.

*Rueth v. State,* 100 Idaho 203, 209, 596 P.2d 75, 81 (1978); *see also State v. Eguilior,* 137 Idaho 903, 906, 55 P.3d 896, 899 (Ct.App. 2002).

In the instant case, there is no dispute regarding the ex parte instruction's occurrence or content. Thus, only the third and fourth prongs are at issue. Walsh contends that the nature of his defense and the jury's question conclusively demonstrate that the jury was affected by the magistrate's instruction and that the jury would have rendered a different verdict had it not received the magistrate's ex parte instruction.

■ In *State v. Randolph,* 102 Idaho 153, 627 P.2d 782 (1981), the Court acknowledged that a literal interpretation of the four-prong test would preclude affirmation except where it appears that the communication could not have had *any* effect on the jury. However, the Court reasoned that such a literal application would result in a per se reversal for all circumstances involving an ex parte communication. *Randolph,* 102 Idaho at 155, 627 P.2d at 784. In *Rueth,* the Idaho Supreme Court concluded that a per se approach would be unwise and indicated that it was reluctant to overturn the results of a lengthy trial where the procedural violation could not have prejudiced, and may even have benefited, the losing party. *Rueth,* 100 Idaho at 207, 596 P.2d at 79. Accordingly, application of the four-pronged test must be tempered by countervailing considerations including this Court's responsibility to determine whether the error below was harmless or prejudicial. *Randolph,* 102 Idaho at 155, 627 P.2d at 784.

Notwithstanding the Court's holding in *Randolph,* Walsh contends that in light of the United States Supreme Court's analysis of ex parte communications in *Rushen v. Spain,* 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) and *Rogers v. United States,* 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975), application of the four-pronged test cannot be diluted with a harmless error analysis. However, *Rogers* and *Rushen* do not support Walsh's position. The Court in *Rushen,* like *Randolph* and *Rueth,* rejected an approach that mandated automatic reversal when the trial court communicated ex parte with the jury. The Court in *Rushen* "emphatically disagree[d]" with the Ninth Circuit Court of Appeals' conclusion that an unrecorded ex parte communication could never be harmless error because the absence of a contemporaneous record made intelligent application of the harmless error standard impossible. *Rushen,* 464 U.S. at 117, 104 S.Ct. at 454–55, 78 L.Ed.2d at 272. Although the right to presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant, cases involving deprivations of those constitutional rights are subject to the general rule that remedies should be tailored to the injury suffered. *Id.* at 117–18 104 S.Ct. at 454–55, 78 L.Ed.2d at 272–73. The Court in *Rushen* reasoned that the Ninth Circuit's conclusion that an unrecorded ex parte communication could never be harmless error ignored the day-to-day realities of courtroom life and undermined society's interest in the administration of criminal justice. *Id.* at 118–19, 104 S.Ct. at 455–56, 78 L.Ed.2d at 273. Although an ex parte communication that relates to an aspect of the trial should be disclosed to all parties, the prejudicial effect of a failure to do so can normally be determined by a post-trial hearing. *Id.* at 119, 104 S.Ct. at 456, 78 L.Ed.2d at 273. Thus, *Rushen* holds that an ex parte communication between the trial court and jury is subject to a harmless error analysis. *See also Bishawi,* 272 F.3d at 462; *United States v. Walton,* 908 F.2d 1289, 1296 (6th Cir.1990).

In *Rogers*, the United States Supreme Court addressed the trial court's response to the jury's inquiry whether the trial court would accept a verdict of guilty with a recommendation for mercy. The Court concluded that the jury's communication to the trial court was tantamount to a request for further instruction. *Rogers*, 422 U.S. at 39, 95 S.Ct. at 2094–95, 45 L.Ed.2d at 6. The Court in *Rogers* indicated that, although a violation of the right to presence might be harmless in some circumstances, in light of the nature and manner of the information conveyed to the jury in that case, the trial court's error was not harmless. *Id.* at 39–40, 95 S.Ct. at 2094–95, 45 L.Ed.2d at 6–7. Therefore, contrary to Walsh's assertion, the Court in *Rogers* recognized that the denial of a defendant's right to presence is subject to a harmless error analysis.[4]

There is general agreement among the federal circuit courts that a trial court's error in replying to a note from the jury in the absence of the defendant does not require reversal if the error was harmless. *See United States v. Toliver*, 330 F.3d 607, 612 (3d Cir.2003). However, different courts have applied different standards to determine whether an error is harmless. *See id.* at 612–13. A trial court's ex parte communication with the jury about the matter pending before it is presumptively prejudicial. *Bishawi*, 272 F.3d at 462; *United States v. Dockter*, 58 F.3d 1284, 1287 (8th Cir.1995); *United States v. Carter*, 973 F.2d 1509, 1515 (10th Cir.1992). The prejudicial effect of an ex parte contact is rebuttable by showing harmless error or the absence of prejudice. *Bishawi*, 272 F.3d at 462; *Dockter*, 58 F.3d at 1287. When an ex parte communication rises to the level of a constitutional violation, the burden is on the prosecution to prove that the error was harmless beyond a reasonable doubt. *Toliver*, 330 F.3d at 613; *Rosales–Rodriguez*, 289 F.3d at 1109. However, federal courts have applied other standards when evaluating whether a violation of

the federal rule requiring a defendant's presence is harmless. *See Rosales–Rodriguez*, 289 F.3d at 1109; *Bishawi*, 272 F.3d at 462; *United States v. Harris*, 9 F.3d 493, 499 (6th Cir.1993).

In this case we need not determine whether the magistrate's error violated Walsh's constitutional right to presence. In Idaho, an error is harmless if the appellate court is able to say, beyond a reasonable doubt, that the jury would have reached the same result absent the error. *State v. Boman*, 123 Idaho 947, 950–51, 854 P.2d 290, 293–94 (Ct.App.1993). We apply this standard when evaluating constitutional errors. *See State v. Tucker*, 138 Idaho 296, 299–300, 62 P.3d 644, 647–48 (Ct.App.2003). Further, the four-prong test places the burden on the party that prevailed below to prove that the ex parte communication did not affect the jury. *See Randolph*, 102 Idaho at 154–55, 627 P.2d at 783–84; *Rueth*, 100 Idaho at 209, 596 P.2d at 81. Thus, even if the magistrate's error violated only Walsh's statutory right to presence and did not rise to the level of a constitutional violation, we apply the same harmless error standard. Accordingly, we will reverse Walsh's conviction unless the state has demonstrated that the ex parte instruction was harmless beyond a reasonable doubt.

In *Randolph*, the trial court and the prosecutor reviewed and responded to a written request for instruction from the jury without consulting the defense. The Idaho Supreme Court held that, although the trial court erred, the information provided was correct and, therefore, the error was harmless. *Randolph*, 102 Idaho at 155–56, 627 P.2d at 784–85. Similarly, in *Dockter* the defendants argued that the trial court's ex parte response to a note sent by the jury during deliberations requesting a definition of "knowingly" constituted reversible error. The appellate court concluded that, although

---

4. A number of courts have also concluded that the Supreme Court in *Rogers* endorsed application of a harmless error analysis when the trial court communicates ex parte with the jury. *See e.g. United States v. Evans*, 352 F.3d 65, 68–69 (2d Cir.2003); *United States v. Toliver*, 330 F.3d 607, 611 (3d Cir.2003); *Rosales–Rodriguez*, 289

F.3d at 1111; *Bishawi*, 272 F.3d at 462; *United States v. Harris*, 9 F.3d 493, 499 (6th Cir.1993); *United States v. Guida*, 792 F.2d 1087, 1091 (11th Cir.1986); *State v. McGinnes*, 266 Kan. 121, 967 P.2d 763, 770–71 (1998); *State v. Hatch*, 346 N.W.2d 268, 278 (N.D.1984).

it did not condone the trial court's communication with the jury, it was satisfied that the presumption of prejudice had been overcome because the trial court's definition of "knowingly" was essentially a correct statement of the law. *Dockter,* 58 F.3d at 1287–88.

■ In this case, the magistrate erred by failing to follow the procedure set forth in I.C. § 19–2204 in responding to ex parte a question from the jury during deliberations and by instructing it further. However, if the instruction was a correct statement of the law, then we can say, beyond a reasonable doubt, that the jury would have reached the same result absent the magistrate's failure to give notice to the parties prior to giving the instruction.

■ The magistrate informed the jury that provocation was not a defense to domestic battery and whether provocation existed was for the jury to decide. Walsh contends that the state was required to prove that Walsh touched the victim against her will and that the victim's actions provoking Walsh to anger implied the victim's consent to be touched. Thus, Walsh argues that the jury could have reasonably concluded that the victim's provocative acts negated an element of the crime and the magistrate's ex parte instruction foreclosed that view of the evidence. However, Walsh has cited no legal authority which supports the contention that provocation is a defense to domestic battery or that provocation implies the victim's consent to be battered. Indeed, interpreting provocation as implying consent to batter would be misguided. No provocative act, which does not amount to a threat or attempt to inflict injury, and no conduct or words, no matter how offensive or exasperating, are sufficient to justify such a battery. *People v. Mayes,* 262 Cal.App.2d 195, 68 Cal.Rptr. 476, 478 (1968). The magistrate's instruction, insofar as it directed the jury that provocation is not a defense to battery, was a correct statement of law. However, the magistrate's statements, which informed the jury that it could consider whether any provocation existed, were superfluous and inconsistent with its instruction. Nevertheless, because that information allowed the jury to consider whether provocation existed despite such information being irrelevant to whether Walsh committed domestic battery, the magistrate's error benefited Walsh and could not have caused him any harm. Therefore, we conclude that the magistrate's ex parte instruction to the jury was harmless beyond a reasonable doubt.

### B. Defense of Property Instruction

■ Walsh also argues that the magistrate erred by refusing Walsh's request that the jury receive instruction regarding the defense of property. The question whether the jury has been properly instructed is a question of law over which we exercise free review. *State v. Gleason,* 123 Idaho 62, 65, 844 P.2d 691, 694 (1992). When reviewing jury instructions, we ask whether the instructions as a whole, and not individually, fairly and accurately reflect applicable law. *Bowman,* 124 Idaho at 942, 866 P.2d at 199. A requested jury instruction need not be given if it is either an erroneous statement of the law, adequately covered by other instructions, or not supported by the facts of the case. *State v. Eastman,* 122 Idaho 87, 89, 831 P.2d 555, 557 (1992); *State v. Schneider,* 129 Idaho 59, 63, 921 P.2d 759, 763 (Ct.App. 1996).

■ As an initial matter, we note that Walsh's proposed jury instruction was not included in the record on appeal and the appellate record fails to disclose the content of that instruction. It is the responsibility of the appellant to provide a sufficient record to substantiate his or her claims on appeal. *State v. Murinko,* 108 Idaho 872, 873, 702 P.2d 910, 911 (Ct.App.1985). In the absence of an adequate record on appeal to support the appellant's claims, we will not presume error. *State v. Beason,* 119 Idaho 103, 105, 803 P.2d 1009, 1011 (Ct.App.1991).

In his notice of appeal in the instant case, Walsh requested that all jury instructions, which were offered or given, be made part of the appellate record. Walsh's proposed jury instruction should have been automatically included in the clerk's record on intermediate appeal. *See* I.C.R. 54.8. Thus, Walsh took the appropriate steps, which should have ensured that his proposed instruction

was included in the record on this appeal. Nonetheless, Walsh had twenty-eight days following receipt of the clerk's record in this appeal to file an objection to the record, including requests for corrections, additions, or deletions. *See* I.A.R. 29(a). The state, in its brief on appeal, put Walsh on notice that the proposed instruction was omitted from the record. Walsh could have filed a motion to augment or correct the record at any time either prior to or following oral argument. *See* I.A.R. 30, 30.1, 32(c).

Generally, without a copy of the proposed jury instruction this Court would be without sufficient information to evaluate whether the proposed instruction was an erroneous statement of law, adequately covered by other instructions, or not supported by the facts of the case. Nevertheless, in this case we are able to address Walsh's claim without a copy of the proposed instruction because we conclude that the evidence in this case does not support a defense of property theory. A defendant is entitled to have the jury instructed as to his or her theory of the case, but such an instruction need not be given unless there is supportive evidence for that theory. *State v. Mason*, 111 Idaho 660, 669, 726 P.2d 772, 781 (Ct.App.1986). At trial, Walsh argued that the victim knew that the box contained Walsh's inheritance documents, which were his separate property, and that Walsh feared that the victim would destroy his property. Walsh contended that he pushed the victim to remove her from his path so that he could look in the closet for the box containing the documents.

A party about to be injured may lawfully resist the commission of a public offense. I.C. § 19–201. Idaho Code Section 19–202 indicates that, to prevent an illegal attempt by force to take or injure property, the person who lawfully possesses the property may use resistance sufficient to prevent the offense from occurring. The offense about to be committed must be imminent and the defense is not available after the offense has already been completed. *State v. McNeil*, 141 Idaho 383, 386, 109 P.3d 1125, 1128 (Ct.App.2005). In *Mason*, the Court concluded that, because the threat to the defendant had subsided and the defendant

was not about to be injured, lawful resistance was unnecessary. *Mason*, 111 Idaho at 670, 726 P.2d at 782. In *State v. Hoover*, 138 Idaho 414, 64 P.3d 340 (Ct.App.2003), this Court rejected the defendant's claim that he was entitled to a jury instruction based on the theory that the defendant acted to defend himself. No reasonable view of the evidence supported the defendant's self-defense theory because no evidence demonstrated that the victim's actions could have provoked a reasonable fear that the victim was going to harm the defendant. *Hoover*, 138 Idaho at 421, 64 P.3d at 347.

Even if we assume that the victim's removal of the box of documents from Walsh's vehicle was unlawful, Walsh's actions could not be reasonably interpreted as resistance necessary to prevent an offense. At the time Walsh battered the victim, the box had already been removed from Walsh's vehicle and Walsh did not know its location. Therefore, no resistance could have prevented an unlawful taking. Further, no evidence suggests that there was an imminent threat that the victim would destroy the documents, which could justify resistance to prevent such injury. The evidence in this case does not support the legal theory of defense of property and, therefore, the magistrate did not err in refusing to give such an instruction.

### III.

### CONCLUSION

Although it was error for the magistrate to respond to the jury's request for instruction without consulting the parties, that error was harmless and does not require reversal. Further, the magistrate did not err by refusing to instruct the jury on defense of property. The district court's order, affirming the judgment of conviction entered by the magistrate, is affirmed.

Judge LANSING and Judge Pro Tem WOOD concur.