UNITED STATES of America,
Plaintiff–Appellee,

v.

Simon ROSALES–RODRIGUEZ,
Defendant–Appellant.

No. 00–50145.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 2001.

Submission deferred May 31, 2001.

Resubmitted May 1, 2002.

Filed May 8, 2002.

Suzanne M. Lachelier, Federal Defenders of San Diego, Inc., San Diego, CA, for the defendant-appellant.

Patrick K. O'Toole, United States Attorney, John N. Parmley, Assistant U.S. Attorney, U.S. Attorney's Office, San Diego, CA, for the plaintiff-appellee.

Before KOZINSKI and TALLMAN, Circuit Judges, and WINMILL,* District Judge.

## OPINION

TALLMAN, Circuit Judge.

When Simon Rosales–Rodriguez was stopped while trying to cross the border into the United States from Mexico in September 1999, a customs inspector discovered 100 pounds of marijuana in a hidden compartment of his car. Rosales–Rodriguez was arrested and subsequently indicted on one count of importation under 21 U.S.C. §§ 952, 960 and one count of possession with intent to distribute under 21 U.S.C. § 841. The possession count was later dismissed.

At trial, Rosales–Rodriguez offered the defense that he had been duped; that someone had taken advantage of his serious drinking problem and put the marijuana into his car while he was in an alcoholic stupor. On the morning of the jury's first full day of deliberation, the district court, without the knowledge of the parties, sent an unsolicited note to the jurors informing them that if they were still deliberating at the end of the day (a Friday), an alternate juror would replace an impaneled juror the next week and the panel would have to begin deliberations anew. The jury returned with a guilty verdict around 11:00 o'clock that morning.

We must determine whether the district court committed a constitutional or statutory violation by delivering the note to the jury and, if so, whether the error was harmless. We must also address whether Rosales–Rodriguez was entitled to a jury instruction that voluntary intoxication is a defense to importation of marijuana. Finally, we must address the constitutionality of § 960, and the district court's failure to give Rosales–Rodriguez a downward adjustment at sentencing. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

### I

Rosales–Rodriguez presented extensive evidence at trial that he had a serious and ongoing drinking problem, and that he had been drinking the day of his arrest and the previous day. The customs inspector who arrested him acknowledged that Rosales–Rodriguez had alcohol on his breath, but Rosales–Rodriguez testified that he was not intoxicated when he attempted to cross the border at Calexico, California.

---

* Honorable B. Lynn Winmill, Chief Judge, United States District Court for the District of Idaho, sitting by designation.

Rosales–Rodriguez argued in closing that he was unaware of the marijuana because someone in Mexico secretly put it in his Ford Explorer under the rear seat while he was intoxicated. He requested an instruction to allow the jury to consider evidence of voluntary intoxication as a defense to importation. The district court held that because importation is a general, rather than a specific intent offense, Rosales–Rodriguez was not entitled to that instruction. The court did, however, instruct the jury on the defense theory that Rosales–Rodriguez was tricked into unknowingly importing marijuana from Mexico into the United States.

The jury deliberated for less than an hour on the first day they were given the case. The next morning, a Friday, the district court sent an unsolicited note to the jury in the absence of the parties, stating:

> In the event the jury is still deliberating on Friday afternoon, Dec. 3, at 4:30 PM and wishes to continue their deliberations on Tuesday next, please be advised the Court will insert one of the alternate jurors in the place of the juror who has indicated a conflict in jury attendance next week. In this event, the jury will have to start the deliberations from the beginning since the alternate must be present at all stages of the jury's deliberations which lead up to the jury verdict.

The jury resumed deliberations on Friday morning, then returned with a verdict of guilty at 11:00 a.m.

At sentencing, Rosales–Rodriguez requested a downward adjustment for a minimal or minor role pursuant to United States Sentencing Guidelines § 3B1.2. The district court denied that request. It found that Rosales–Rodriguez could have owned the marijuana himself, and noted that the jury had disbelieved his trial testimony that he was an innocent, unknowing courier. The court refused to grant either a four-level or a two-level downward adjustment under § 3B1.2.

## II

### A

We begin with the court's unsolicited note on jury deliberations. A defendant has the right to be present at every stage of the trial. The right is both constitutional and statutory. The constitutional right, which is the right to be present at every "critical stage" of the trial, is based in the Fifth Amendment Due Process Clause and the Sixth Amendment Right to Confrontation Clause. *See La Crosse v. Kernan,* 244 F.3d 702, 707–08 (9th Cir.2001). Under the Constitution, the defendant's presence "is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985) (per curiam) (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 108, 54 S.Ct. 330, 78 L.Ed. 674 (1934)). If the ex parte communication rises to the level of a constitutional violation, then the burden is on the prosecution to prove that the error was harmless beyond a reasonable doubt. *See United States v. Kupau,* 781 F.2d 740, 743 (9th Cir.1986).

The defendant also has a broader statutory right to be present "at every stage of the trial including the impaneling of the jury and the return of the verdict." Fed.R.Crim.P. 43. If the ex parte communication represents only a statutory violation, then the defendant's absence is harmless error if "there is no reasonable possibility that prejudice resulted from the absence." *Kupau,* 781 F.2d at 743.

We find that the district court's communication with the jury constituted both a

constitutional and a statutory violation but that the error was harmless beyond a reasonable doubt and that "there is no reasonable possibility that prejudice resulted from the [defendant's] absence."

██ The Constitution does not guarantee that a criminal defendant be "present at all stages of the trial," but rather, only at "critical stage[s]." *La Crosse,* 244 F.3d at 707–08. Neither the Supreme Court nor our own circuit has previously stated whether the delivery of a supplementary jury instruction constitutes a "critical stage" requiring the defendant's presence.

Our circuit has found constitutional error subject to harmless error analysis where neither the defendant nor his counsel was aware of a read-back of a defendant's testimony to the jury, *see Fisher v. Roe,* 263 F.3d 906, 914–17 (9th Cir.2001); *Hegler v. Borg,* 50 F.3d 1472, 1474–76 (9th Cir.1995), and where a defendant was absent during sentencing, *see Hays v. Arave,* 977 F.2d 475, 478 (9th Cir.1992), *overruled on other grounds by Rice v. Wood,* 77 F.3d 1138, 1144 n. 8 (9th Cir.1996) (en banc).

The Supreme Court has not found constitutional error, however, where the defendant was not present during a hearing to determine the competency of key witnesses for the prosecution, *see Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987), an in camera examination of a juror who felt intimidated by the defendant, *see Gagnon,* 470 U.S. at 526–27, 105 S.Ct. 1482, or the jury's examination of the crime scene, *see Snyder,* 291 U.S. at 108–110, 122, 54 S.Ct. 330.

As we noted in *Fisher,* in each of the three cited Supreme Court cases, while the defendant "had *no* right personally to be present . . . at least one defense attorney was present at the proceeding from which the defendant was excluded." 263 F.3d at 915–16. While the Supreme Court has stated that the "privilege of presence is not guaranteed when presence would be useless, or the benefit but a shadow," *Stincer,* 482 U.S. at 745, 107 S.Ct. 2658 (internal quotation marks omitted), it has also required the lower courts to examine any possible violation of the right "in light of the whole record." *Gagnon,* 470 U.S. at 526–27, 105 S.Ct. 1482.

We cannot say that the defendant's presence or at least that of his counsel is useless when a trial court prepares a supplemental instruction to be read to a deliberating jury. Counsel might object to the instruction or may suggest an alternative manner of stating the message. This may not have made a difference in this case, and, in fact, we so hold, but because Rosales–Rodriguez's attorney was not aware of the preparation and delivery of the supplementary jury instruction, we find that the error rises to the level of a constitutional violation.

██ Having found that the delivery of a supplementary jury instruction constitutes a "critical stage" of a trial for which the defendant's presence (or that of his counsel) is constitutionally required, it is clear that the defendant also had a statutory right to be present under Fed. R.Crim. Proc. 43. Just as "the jury's message should have been answered in open court and . . . petitioner's counsel should have been given an opportunity to be heard before the trial judge responded" in *Rogers v. United States,* 422 U.S. 35, 39, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975),[1] in this case, Rosales–Rodriguez's counsel should have been "given an opportunity to be

---

1. In *Rogers,* the jury sent a note to the judge asking if a verdict of "Guilty as charged with extreme mercy of the Court" was acceptable

and received an affirmative reply from the judge who did not alert defense counsel. 422 U.S. at 36, 95 S.Ct. 2091.

heard before the trial judge [communicated with the jury]."

■ Nevertheless, despite the constitutional and statutory violations, we affirm Rosales–Rodriguez's conviction because we hold the errors to be harmless beyond a reasonable doubt.

The district court had his law clerk present the note to the jury early Friday morning. The jury returned its verdict at 11:00 a.m., well before the 4:30 p.m. deadline, indicating that it did not have any difficulty reaching the verdict and would have reached it that day even if the instruction had not been given. The instruction therefore was not coercive and did not cause the jury to rush to judgment. Moreover, the evidence against the defendant was overwhelming: customs inspectors found 100 pounds of marijuana in a hidden compartment of Rosales–Rodriguez's Ford Explorer. His only defense was that someone had secretly put the marijuana inside the vehicle while he was drunk and passed out. Once the jury rejected Rosales–Rodriguez's dubious tale, a guilty verdict was inevitable. Even if Rosales–Rodriguez's counsel had persuaded the court to reword or even forego its supplemental instruction, we are persuaded beyond a reasonable doubt that the jury would have found Rosales–Rodriguez guilty. We therefore hold the constitutional error to be harmless beyond a reasonable doubt.

■ For similar reasons, though the district court violated Fed.R.Crim.P. 43 by giving the instruction to the jury without informing counsel, the statutory violation was likewise harmless. Rule 43 violations may be found to be harmless after examining the (1) "the nature of the information conveyed to the jury" and (2) "the manner in which it was conveyed." *Rogers,* 422 U.S. at 40, 95 S.Ct. 2091.

The instruction informed the jury that if they wished to continue deliberating past 4:30 p.m. on Friday, an alternate juror would replace a member of the panel and the jurors would have to begin deliberations anew. The instruction did not attempt to sway jurors one way or the other to reach a premature decision. More importantly, the manner in which the information was conveyed supports a finding that the error was harmless. As we have already noted, the verdict was reached only a couple of hours after the instruction was given, long before the events discussed in the note would occur and shortly after the jury began its deliberation. Finally, we note that the jury had not spent weeks or even days in deliberation prior to delivery of the supplemental instruction. Thus, this was not a case where the instruction threatened to undo many hours of work. In this case, the jury had deliberated for less than an hour prior to receiving the instruction and would have spent at most one day and an hour's worth of deliberation before having to start anew had they not reached a verdict that Friday. We find it unreasonable to presume a jury would reach a premature guilty verdict just to avoid a single extra day of deliberation. We therefore find no reasonable possibility that the instruction prejudiced Rosales–Rodriguez by pressuring the jury into reaching a hasty verdict. *See Kupau,* 781 F.2d at 743.

We hold that while the court committed constitutional and statutory violations in delivering the note to the jury, the errors were harmless.

**B**

■ Rosales–Rodriguez contends the district court erred in denying his proffered instruction on voluntary intoxication. He asks us to find that § 960 is a crime that requires specific intent, making voluntary intoxication a defense. *See United*

*States v. Oliver,* 60 F.3d 547, 551 (9th Cir.1995).

We note that our decisions may not provide much clarity as to whether § 960 is a specific intent or general intent crime. *Compare United States v. Meraz Solomon,* 3 F.3d 298, 299 (9th Cir.1993) (holding that the defendant had the burden of proof concerning his duress defense because § 960 did not require intentional commission as a necessary element of the offense) *with United States v. Flickinger,* 573 F.2d 1349, 1359 (9th Cir.1978) (stating, without explanation, that § 960 is a specific intent offense), *overruled on other grounds by United States v. McConney,* 728 F.2d 1195 (9th Cir.1984).

We need not harmonize the case-law, for Rosales–Rodriguez testified that he was not intoxicated when he crossed the border and was arrested. He was allowed to argue that he was tricked into importing the marijuana because he was intoxicated while in Mexico, and the jury was instructed to that effect. Given that the evidence showed that Rosales–Rodriguez was not intoxicated when he actually imported the marijuana, the instruction based on the theory that he was "tricked" fit better with the facts of this case than would an instruction on voluntary intoxication. By its verdict, the jury obviously did not find Rosales–Rodriguez so drunk at the port of entry that he did not know what he was doing.

### C

 Rosales–Rodriguez also argues that 21 U.S.C. § 960 is unconstitutional in light of the Supreme Court's ruling in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). That argument was recently made and rejected by this court in *United States v. Mendoza Paz,* 286 F.3d 1104 (9th Cir.2002), which followed the rationale of *United States v. Buckland,* 277 F.3d 1173 (9th Cir.2002) (en

banc) (holding 21 U.S.C. § 841 to be constitutional).

### D

 Finally, Rosales–Rodriguez contends that the district court erred in refusing to grant him a four- or two-level downward adjustment for his minimal role in the crime under U.S.S.G. § 3B1.2. "The defendant has the burden of proving that he is entitled to a downward adjustment based on his role in the offense by a preponderance of the evidence." *United States v. Davis,* 36 F.3d 1424, 1436 (9th Cir.1994). We review for clear error the district court's finding that a defendant is not entitled to a downward adjustment because he played a minor or minimal role. *See United States v. Hursh,* 217 F.3d 761, 770 (9th Cir.2000).

Rosales–Rodriguez offered little evidence that he was entitled to a downward role adjustment. He asserts that he was merely a courier and the evidence showed that the truck was registered to him only a few weeks before his arrest. In addition, an expert testified that drug importation operations are often compartmentalized. Rosales–Rodriguez was the sole occupant and driver of the vehicle, however, and the jury found that he knew the vehicle contained approximately 100 pounds of marijuana. Viewed most favorably to Rosales–Rodriguez, the evidence can support the inference that he played a minor role, but it also supports the opposite inference that he purchased the drugs and attempted to import them himself. Thus, the district court did not clearly err by finding that Rosales–Rodriguez did not satisfy his burden of proving that he played a minor role and by refusing the downward adjustment.

AFFIRMED.