**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | Nos. 13-10449 |
| Plaintiff-Appellee, | 14-10340 |
| v. | D.C. No. 2:10-cr-00223-JAM-1 |
| HODA SAMUEL, | |
| Defendant-Appellant. | MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted March 18, 2016
San Francisco, California

Before: NOONAN, GOULD, and FRIEDLAND, Circuit Judges.

In case number 13-10449, appellant Hoda Samuel challenges her conviction

of thirty counts of mail fraud and one count of conspiracy for (1) committing mail

fraud and (2) making false statements to loan companies insured by the Federal

Deposit Insurance Corporation (FDIC). Samuel was a licensed real estate broker

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

who owned a real estate agency and brokerage firm. Samuel's convictions stem from her activities engineering thirty fraudulent real estate transactions in which she submitted loan applications to lending institutions with false information about the financial status of her client-buyers. This scheme included inflating the sellers' asking prices so that the lenders issued loans for more than the real estate cost, leaving Samuel's clients with cash back. This gave buyers added incentive to purchase the real estate, and Samuel benefitted because she received commission from each transaction.

In case number 14-10340, Samuel challenges the manner in which the district court calculated the restitution payment she owed to the institutions she defrauded, and her physical absence from her restitution hearing. We affirm the conviction, sentence, and restitution order.

**Case number 13-10449:**

1.     The district court did not err in denying Samuel's motion to dismiss the indictment for alleged violations of the Speedy Trial Act, 18 U.S.C. § 3161 et. seq. Samuel argues that the district court violated the Speedy Trial Act by failing to make factual findings supporting the exclusions of time it ordered and to weigh the "ends of justice" exceptions against the public's and her interests in a speedy trial. We review the district court's decision for "clear error as to factual findings and de

novo as to application of legal standards." *United States v. Alvarez-Perez*, 629 F.3d 1053, 1056-57 (9th Cir. 2010).

Samuel's motion to dismiss the indictment for violations of the Speedy Trial Act was based on five separate district court orders excluding time. The district court made specific factual findings supporting the "ends of justice" reasons it cited on each of the occasions it ordered an exclusion of time and therefore did not err in denying Samuel's motion.[1] Samuel's argument that the district court failed to conduct an explicit balancing test explaining why the "ends of justice" reasons it cited for granting the continuances outweighed the public's and her interests in a speedy trial is unavailing because this court does not require such explicit balancing. *See, e.g., United States v. Shetty*, 130 F.3d 1324, 1330 (9th Cir. 1997) (stating that the district court satisfied the Speedy Trial Act by citing "undisputed facts to support each continuance at issue").

Samuel also argues that the district court violated her right to a speedy trial when it ordered exclusions of time on two occasions after Samuel moved to dismiss the indictment. Because Samuel did not argue that these later exclusions of

---

[1] That the court, in making its factual findings, adopted stipulated facts is of no moment. *United States v. Ramirez-Cortez*, 213 F. 3d 1149, 1157 n.9 (9th Cir. 2000) ("District Courts may fulfill their Speedy Trial Act responsibilities by adopting stipulated factual findings which establish valid bases for Speedy Trial Act continuances.").

3

time violated her right to a speedy trial before the district court, this argument is waived. *United States v. Wirsing*, 867 F.2d 1227, 1230 (9th Cir. 1989). Lastly, Samuel argues that the district court violated her right to a speedy trial by ordering exclusions of time prior to setting a trial date. Samuel's argument is without merit because neither of the out-of-circuit cases she cites require the trial court to set a trial date, nor do they impose a sanction under the Speedy Trial Act for failing to do so. *See, e.g., Beech-Nut Nutrition Corp.* 871 F.2d 1181, 1198 (2d Cir. 1989) (stating that "[t]hough it would perhaps generally be preferable for the court initially to set a tentative trial date, it is not an abuse of discretion . . . to postpone the setting of a date until the extent of the needed pretrial proceedings becomes clearer, so long as there is no intent or appearance that unlimited or undue delay will be permitted").

2.     The evidence supporting Samuel's mail fraud convictions under 18 U.S.C. § 1341 was sufficient to support Samuel's convictions. Samuel argues that the Government's evidence was insufficient because it failed to prove that (1) the deeds of trust the Government used to establish mail fraud were in fact mailed, and (2) these mailings furthered Samuel's fraudulent scheme. We review de novo an appellant's claim of insufficient evidence to support a mail fraud conviction. *See United States v. Bennett*, 621 F.3d 1131, 1135 (9th Cir. 2010). There is sufficient

evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Stanton*, 501 F.3d 1093, 1099-1100 (9th Cir. 2007).

In order for the Government to convict Samuel of mail fraud under 18 U.S.C. § 1341 it must show that (1) Samuel participated in a scheme to defraud and (2) Samuel used the mail for the purpose of executing the scheme. *Pereira v. United States*, 347 U.S. 1, 8 (1954). In establishing that a defendant used the mail in executing the fraudulent scheme, the Government may rely on circumstantial evidence. *United States v. Green,* 745 F.2d 1205, 1208 (9th Cir. 1984). In this case, the Government introduced circumstantial evidence demonstrating that the county recorder mailed the deeds of trust to the relevant lending institutions. This evidence included copies of most of the deeds of trust from the lenders' files bearing the county recorder's stamp and testimony from lending institution employees stating that it was part of the normal course of business to receive copies of deeds of trust through the mail. Concerning the instances where the lending institution did not have a deed of trust bearing the county recorder's stamp, the Government introduced documents from the county recorder indicating that it had mailed copies of the deeds to the lender. This evidence was bolstered by the stipulation entered

5

into at trial that the "original paper version of the recorded deed [was] mailed by the United States Postal Service to the party that requested the recording." Samuel's claim that the Government's evidence of the mailings was insufficient is therefore without merit.

In establishing that the mailings were "for the purpose of" executing the scheme, the Government does not need to demonstrate that the mailings were "an essential element of the scheme," but only that they were "*incident* to an essential part of [it]." *United States v. Lo*, 231 F.3d 471, 478 (9th Cir. 2000) (quoting *Pereira*, 231 F.3d at 8). This Court has held that a county recorder's mailing of deeds of trust to a lending institution is incident to an essential part of a fraudulent scheme, as the scheme was conceived by the perpetrator. *Id.* In *Lo*, which involved a similar mortgage fraud scheme, this court held that a jury could reasonably have found that the "routine mailings of the deeds to the owner of the property interest was incidental to an essential aspect of this overall sham sale scheme." *Id.* at 479. "The mailings could serve to 'lull the victims' . . . 'into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely,' by assuring . . . that the conveyance of the property had gone forward in accordance with the usual procedures." *Id.* A jury here likewise could have reasonably found that Samuel's scheme as conceived

included this "lulling" component. Samuel's sufficiency of the evidence argument thus additionally fails on these grounds.

3.      Samuel argues for the first time before this Court that her conviction for conspiracy should be reversed because there was insufficient evidence establishing that her scheme defrauded an FDIC-insured lender. We review a claim of insufficient evidence raised for the first time on appeal for plain error. *United States v. King*, 735 F.3d 1098, 1106 (9th Cir. 2013). Samuel was convicted of one count of dual object conspiracy under 18 U.S.C. § 371, which makes it illegal to conspire to commit a federal offense or to defraud a United States agency. The jury found Samuel guilty of both conspiring to commit mail fraud in violation of 18 U.S.C. § 1341, and conspiring to make false statements on loan applications to FDIC-insured lending institutions. The conspiracy conviction would therefore stand based solely on the jury's determination that Samuel conspired to commit mail fraud in violation of 18 U.S.C. § 1341. *See United States v. Manarite*, 44 F.3d 1407, 1413 (9th Cir. 1995) (recognizing that multiple object conspiracy convictions can stand provided that any one of the objects supports the conviction and that it is clear that the jury found the defendant guilty of conspiracy with respect to that object).

4.     The district court did not err in applying an enhancement for an abuse of trust under U.S.S.G. § 3B1.3. Samuel argues that the sentencing enhancement does not apply because a real estate broker is not a position of trust. Because Samuel challenged this enhancement before the district court, albeit on different grounds, we review this claim de novo. *See United States v. Charles*, 581 F.3d 927, 933-34 (9th Cir. 2009).

The enhancement for an abuse of position of trust applies when a defendant "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense . . . ." U.S.S.G. § 3B1.3. A "position of public or private trust" is one "characterized by professional or managerial discretion." *Id.* at cmt. 1. Because in this case Samuel held a managerial role as the owner of both a real estate firm and mortgage brokerage, and used that position of authority to perpetrate the scheme, the district court properly applied the sentencing enhancement. *United States v. Laurienti*, 731 F.3d 967, 973 (9th Cir. 2013) (holding that "the presence or lack of 'professional or managerial discretion' represents the decisive factor in deciding whether a defendant occupied a position of trust").

**Case number 14-10340:**

1.      This case does not need to be remanded because it was clear that the district court ordered restitution based on the Mandatory Restitution Victims' Act (MVRA), 18 U.S.C. § 3663A. We review the legality of a restitution order de novo and the factual findings supporting the order for clear error. *United States v. Luis*, 765 F.3d 1061, 1065 (9th Cir. 2014). "Provided that it is within the bounds of the statutory framework," we review the amount awarded by a restitution order for abuse of discretion. *Id*. (quoting *United States v. Brock–Davis*, 504 F.3d 991, 996 (9th Cir. 2007)).

Samuel argues that the district court's failure to articulate the statutory basis for the restitution order makes it impossible for this Court to review its legality, thus necessitating a remand. This is incorrect. Samuel herself recognized in her restitution hearing brief that the district court ordered restitution as "required by the Mandatory Victims Restitution Act of 1996." This was obviously true to all concerned. Under the MVRA, restitution is mandatory for "any offense committed by fraud or deceit [under this title]." 18 U.S.C. § 3663A(c)(1). Samuel was convicted of mail fraud, conspiracy to commit mail fraud, and making false statements in mortgage applications, all under Title 18. Further, Samuel's presentence report stated that restitution would be imposed because it was

9

mandatory, and the district court stated at Samuel's sentencing hearing that restitution would be mandatory. Thus, there is no need for this court to remand this case for further clarification regarding the basis for the district court's restitution order.

2.      Samuel was not deprived of her constitutional due process or statutory rights under Fed. R. Crim. P. 43 by the district court's decision not to order her transported to the restitution hearing.[2] A defendant has a constitutional right to be present at every "'critical stage' of the trial." *United States v. Rosales-Rodriguez*, 289 F.3d 1106, 1109 (9th Cir. 2002). However, a defendant's absence only violates due process "to the extent that a fair and just hearing would be thwarted by [this] absence, and to that extent only." *Id.* (quoting *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (per curiam). If the defendant's absence does rise to the level of a due process violation, "the burden is on the prosecution to prove that the error was harmless beyond a reasonable doubt." *Id.*

Under Fed. R. Crim. P. 43, "[a] defendant also has a statutory right to be present at 'every trial stage' as well as at 'sentencing.'" *United States v. Marks*,

_____

[2] On March 17, 2015, Samuel filed a motion asking this court to take judicial notice of administrative documents she submitted to the prison appealing the warden's decision denying her request to be transported to her restitution hearing and to receive her electronically-stored defense files. We grant this motion and have taken notice of these documents.

530 F.3d 799, 812-13 (9th Cir. 2008) (quoting Rule 43). "If the denial of the right to be present represents only a statutory violation, then 'the defendant's absence is harmless error if there is no reasonable possibility that prejudice resulted from the absence.'" *Id.* at 813 (quoting *Rosales-Rodriguez*, 289 F.3d at 1109.) (internal quotation marks omitted).

Due to health concerns, Samuel participated in the hearing by video conference. She was able to present her case to the court: she testified in her defense, and made an additional statement after the court heard argument from her counsel and the Government. There is no indication that Samuel was prejudiced in any way by not being physically present at the hearing.[3] There is thus no reason to believe that a "fair and just hearing [was] thwarted" by Samuel's physical absence,

---

[3] At best, Samuel vaguely states in her Reply Brief, without elaboration, that she had moved for the hearing to be continued because she had been "denied her right to review the records of the case and thus could not adequately confer with her attorney." Samuel failed to argue this point in her opening brief, and, in any event, does not explain how this supposed denial of her right to review records had anything to do with her physical absence at the restitution hearing, or how any lack of access to records or her attorney prevented her from making any argument or otherwise rendered the hearing unjust in any way. *See Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997) ("We will not consider any claims that were not actually argued in the opening brief," nor will we consider argument not "specific[ally] and cogent[ly]" presented for our consideration.).

nor any "reasonable possibility that prejudice resulted from the absence." *Rosales-Rodriguez*, 289 F.3d at 1109.

3. The district court's restitution order is substantively correct because it calculated restitution in accord with controlling Supreme Court precedent. *See Robers v. United States*, 134 S. Ct. 1854 (2014). Samuel argues that the district court erred in (1) calculating the amount of the restitution order, (2) granting restitution to institutions with insufficient evidence demonstrating that they were the injured parties, and (3) admitting exhibits, including charts of the lending institutions' losses, without properly laying the foundation for their admissibility as business records. The district court correctly calculated Samuel's restitution by offsetting the loss amount with the amount recovered by the institutions through the sale of the properties following foreclosure, rather than the value of the properties at the time the institutions took title of them in foreclosure. *Id.* at 1857-58. There is no evidence in the record indicating that any entity other than those claiming restitution were injured as a consequence of the fraud, thus rendering Samuel's argument to the contrary meritless. Finally, Samuel's argument concerning the admissibility of the challenged exhibits is not persuasive because the rules of evidence do not apply to sentencing proceedings.

We therefore **AFFIRM** the district court's decisions with respect to both cases 13-10449 and 14-10340.